**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Empower Energies, Inc., a Delaware corporation,

Plaintiff,

v.

SolarBlue, LLC, a Florida limited liability company, and Does 1–20,

Defendants.

Case No. ________________

## COMPLAINT

Plaintiff Empower Energies, Inc. ("Empower") alleges and claims against Defendant SolarBlue, LLC ("SolarBlue" or "Defendant"), and Does 1 through 20 as follows:

## INTRODUCTION

1. This action arises out of SolarBlue's intentional breach of an agreement with Empower regarding the development of a planned 4,279.24 kilowatt solar energy generation project located in Framingham, Massachusetts (the "Project"). Over its life-span, the Project as planned will generate $25 million in revenue and returns for its operator.

2. Empower designs, builds, owns, and finances commercial and industrial-scale solar projects throughout the United States. In October 2015, Empower partnered with SolarBlue, which lacked the financial resources and expertise to develop the Project on its own. Pursuant to an Asset Purchase Agreement ("APA"), SolarBlue transferred and assigned to Empower all of its rights to develop the Project. SolarBlue had acquired these rights from third-party ADESA, a wholesale, used-car exchange, which had leased a portion of its Framingham property to SolarBlue as the site of the Project and entered into a power purchase agreement to purchase for a 20 year term all of the power produced from the Project.

3. Under the APA, SolarBlue warranted that it would deliver ADESA's consent to the assignment of SolarBlue's rights to the Project, that it would cooperate and communicate with Empower in completing the evaluation and development of the Project, and that it would work with Empower to obtain amendments to the power purchase and site access/lease agreements SolarBlue previously entered into with ADESA. SolarBlue also agreed that Empower had the exclusive right to develop the Project and that SolarBlue would not directly or indirectly interfere with that right by shopping the Project to third parties.

4. While Empower diligently pressed forward with the Project—spending hundreds of thousands of dollars and dedicating hundreds of hours developing and implementing a comprehensive plan for design, permitting, and construction—SolarBlue breached (and continues to breach) each of these warranties. SolarBlue failed to complete basic due diligence tasks it agreed to, failed to deliver documents it agreed to provide, refused to cooperate with Empower in obtaining amendments to the agreements with ADESA, failed to communicate with Empower for weeks at a time, and solicited bids for and disclosed confidential information regarding the Project to third parties.

5. When Empower gave notice of these breaches, SolarBlue tried to terminate the APA by claiming that it was no longer bound to perform its obligations under the APA because ADESA—whose consent SolarBlue promised to deliver—"refused to move forward on the Project with the involvement of Empower." Now SolarBlue seeks to unjustly benefit from Empower's work developing the Project by cutting Empower out of the Project and, upon information and belief, moving forward with a third-party investor to implement the development plan Empower spent months and hundreds and thousands of dollars creating.

6. Through this action, Empower seeks damages caused by SolarBlue's breach of contract, including more than $10 million in lost profits associated with the Project, out of pocket costs incurred in due diligence and its performance pursuant to the APA, attorney's fees and costs in pursuing its claims, and injunctive relief barring SolarBlue from moving forward with the Project without Empower.

## JURISDICTION AND VENUE

7. Plaintiff Empower Energies, Inc. is a designer and developer of renewable energy systems, and a Delaware corporation with its principal place of business in Frederick, Maryland.

8. Upon information and belief, Defendant SolarBlue, LLC is a renewable energy developer, and a Florida limited liability company with its principal place of business in Orlando, Florida.

9. Upon information and belief, Defendants Does 1 through 20, inclusive, are individuals and/or entities who aided and abetted, helped facilitate, and/or controlled the tortious acts described herein. The true names and capacities of Defendants Does 1 through 20 are unknown to Plaintiff at this time.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties.

11. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(3) because SolarBlue is subject to personal jurisdiction in the Southern District with respect to this action.

## FACTUAL BACKGROUND

### A. Empower Energies

12. In recent years, renewable energy has become a larger part of the energy mix in the United States. The percentage of power generated by solar energy continues to grow as the United States makes a shift toward a carbon-free source of energy that is also a job creator.

13. Empower is a leading renewable energy services platform focused on commercial-scale renewable energy markets, clean transportation infrastructure, and energy efficient markets. Empower specializes in solar project development and installation. Its recent projects include designing, building, operating, and financing commercial and industrial-scale solar rooftop, ground-mount, and canopy projects, as well as electric vehicle charging stations throughout the United States.

14. Empower regularly seeks out opportunities to co-develop renewable energy projects with both sophisticated and unsophisticated renewable energy business partners to build projects that last for 25 years or more. Often it will partner with commercial and industrial clients to build solar generation facilities on their property that supply a portion of the client's power needs and provide additional power for sale to the grid.

15. These projects typically involve a power purchase agreement, which defines the design for the installation of the solar facility and the financial terms for the sale to the client of the electricity generated by the facility. These agreements typically have terms of 20 to 25 years during which time the client is obligated to purchase all of the power produced by the solar energy system. As a result, Empower does substantial due diligence regarding the financial status of potential clients to ensure that they can satisfy their payment obligations for electricity during the life of the project.

### B. The Project

16. In May 2014, SolarBlue and ADESA entered into a Power Purchase Agreement ("PPA") and Site Lease Agreement ("Lease"). The PPA had a 20-year term and bound ADESA to purchase all of the power produced by the to-be-constructed solar facility. The Lease gave SolarBlue the right to construct and operate the facility on ADESA's property. It also gave SolarBlue the right to assign all if its rights vis-à-vis the Project, subject to ADESA's consent, which "shall not be unreasonably withheld or delayed." Upon information and belief, ADESA had been in negotiations for a year or more with a third party regarding the solar project when SolarBlue stepped in.

17. In early 2015, SolarBlue approached Empower. It represented that it had acquired development rights from ADESA and that it had partially developed the project, but needed Empower's help and expertise—both financing to fund the construction and operation of the Project and engineering and regulatory know-how to see the Project through permitting and construction.

18. SolarBlue further explained that ADESA would consent to its assignment of its rights under the PPA and Lease. SolarBlue claimed that it had a strong relationship with ADESA and through that relationship anticipated similar projects on land owned by ADESA's affiliates throughout the United States. SolarBlue promised to deliver ADESA's consent to the assignment of the Project and suggested that the Project would be the first of many in partnership with SolarBlue and ADESA.

### C. The APA

19. Based on SolarBlue's representations regarding its agreements with ADESA, ADESA's consent to the assignment of those agreements and rights to develop the Project, and

SolarBlue's purported fitness as a partner, Empower and SolarBlue negotiated and entered into the APA in October 2015.

20. Under the APA, SolarBlue sold and assigned all of its right to all of the assets it owned related to the Project (the "Project Assets"), which included the PPA and Lease between SolarBlue and ADESA. Under the APA, Empower agreed to share its industry know-how and proprietary information regarding the development of solar generation facilities. In return, SolarBlue agreed that it would not share that information with any third party or otherwise exploit it for its own benefit. In reliance on SolarBlue's promises, more fully discussed below, Empower transferred to and shared with SolarBlue a substantial amount of confidential and proprietary information and know-how necessary to complete the Project. Upon information and belief, SolarBlue has retained that information, and is now improperly using it.

### 1. SolarBlue's Duty to Deliver ADESA's Consent to the Assignment of the Project Assets

21. In the APA, SolarBlue made numerous representation and warranties relevant to this action. Chief among them was that it had the "requisite power and authority to execute and deliver" ADESA's consent to the assignment of all of SolarBlue's rights, title, and interest in the Project, including but not limited to those embodied in the PPA and Lease. Indeed, SolarBlue covenanted that it would take all actions "reasonably required to fully effectuate" the transaction contemplated by the APA, "including ***obtaining any third-party consents required . . . to fully vest title and possession of the Project Assets with" Empower***. (APA § 8.1) (emphasis added.)

### 2. SolarBlue's Duty to Cooperate with Empower in the Development of the Project

22. The development of a solar generation facility is a complicated process that involves numerous levels of regulatory oversight and permitting. As a result, SolarBlue made numerous covenants regarding its performance prior to the closing of the APA.

23. For example, SolarBlue covenanted that it would:

a. "[P]erform the Development Activities in accordance with Prudent Industry Practices, and . . . cooperate with [Empower] in satisfying the conditions precedent to Closing." (APA § 8.7);

b. "Reasonably cooperate with [Empower] to assist [Empower's] evaluation and development of the Project." (*Id.* § 8.2(a));

c. Keep Empower informed as to the development activities of the Project, consult with it on all matters material to the Project, and use commercially reasonable efforts to preserve intact the goodwill and relationships with" ADESA. (*Id.* § 8.2(c)(ii));

d. "[U]se commercially reasonable efforts to continue to develop the Project." (*Id.* § 8.2(c)(iv));

e. "Promptly provide [Empower] with written notice of, and keep [Empower] advised as to any pending, threatened or anticipated Action that could reasonably be anticipated to have a Material Adverse Effect on the Project or any Project Asset or that challenges the transactions contemplated hereby." (*Id.* § 8.2(c)(vi)); and

f. Take "all commercially reasonable actions necessary to allow, permit or obtain the right of" Empower to "reasonable access to the management and development personnel of" SolarBlue to conduct due diligence on the Project, including to meet with and discuss the Project with ADESA. (*Id.* § 8.12.)

24. As alleged below, SolarBlue breached (and continues to breach) each of these obligations.

### 3. SolarBlue's Duty to Refrain from Taking Actions to Undermine or Interfere with Empower's Rights Regarding the Project

25. In addition to its affirmative duties to assist Empower with development of the Project, SolarBlue was bound to refrain from certain actions that would materially undermine Empower's rights.

26. For example, SolarBlue agreed that it would not, without Empower's written consent:

a. Pledge "any of the Project Assets." (APA § 8.2(b)(ii));

b. "Waive any rights of material value in, or terminate or amend, any Project Contract, Real Property Contract or Permit." (*Id.* §§ 8.2(b)(iii));

c. "[C]ommit or agree to" "enter into, or become subject to, any agreement or contracts (whether oral or written), or issue or respond to any requests for proposals, with respect to the Project or any Project Asset." (*Id.* §§ 8.2(b)(v), (vii)); or

d. Disclose Empower's confidential information. (*Id.* § 8.6).

27. As alleged below, SolarBlue breached (and continues to breach) each of these obligations.

### 4. SolarBlue's Agreement Not to Interfere with Empower's Exclusive Right to Develop the Project

28. To develop the Project, Empower devoted considerable resources, personnel, and capital to perform due diligence, negotiate agreements, gain regulatory approval, and ultimately fund construction.

29. As a result, the parties agreed that during the Interim Period, *i.e.*, from October 15, 2015, until the APA closed or was terminated, Empower had "the sole and exclusive right to direct the development of the Project" (APA § 8.7) and that SolarBlue was barred from:

a. Soliciting any offers from any third party "relating to the sale, transfer, conveyance, lease, assignment or other disposition of the Project or any Project Asset (an "Alternative Proposal");

b. "[R]esponding in any way to any Alternative Proposal other than to decline to pursue the same;"

c. Participating "in any discussions or negotiations with, or furnish[ing] any nonpublic information to, any Person other than [Empower] or its representatives regarding any Alternative Proposal;" and

d. Entering "into any agreement or understanding, whether oral or in writing with respect to an Alternative Proposal." (*Id*. § 8.3(a)–(d)).

30. As discussed below, SolarBlue breached these exclusivity provisions by secretly shopping the Project to third parties in and around February 2016, and, upon information and belief, at other times as well.

**D. SolarBlue Breaches and Attempts to Terminate the APA**

31. SolarBlue breached the APA by failing to provide numerous deliverables it was obligated to provide as a condition of Closing; failing to consult with Empower for almost a month while Empower was moving forward with Project development and attempting to negotiate amendments to the PPA and Lease; shopping the Project around to third parties in violation of Empower's exclusivity rights; upon information and belief, misappropriating Empower's development plans and work product for its own purposes; and wrongfully attempting to terminate the APA.

### 1. SolarBlue Failed to Provide Key Project Deliverables and Consult with Empower on Matters Material to the Project

32. One of the deliverables SolarBlue was responsible for under the APA was helping Empower secure amendment of the PPA and Lease SolarBlue had entered into with ADESA "in [a] form and substance acceptable to [Empower] in [Empower's] sole discretion." (APA § 5.2(m)(xiii), (xiv).)

33. This was an important condition to Closing for Empower because SolarBlue had failed to include key provisions in these agreements that were customary and necessary in the industry, including but not limited to financial requirements ensuring ADESA's creditworthiness and a schedule for damages in the event ADESA terminated the PPA before the 20-year term expired (*i.e.*, a termination value schedule).

34. Moreover, the PPA and Lease required amendment because while the original PPA called for a rooftop solar installation, ADESA subsequently changed its mind and decided that it wanted a canopy mounted project over a portion of the Project site's parking lot, *i.e.*, panels arrayed on tall ground mounts that would cover some parking spots to create shade. This design change materially altered the permitting process required for the Project and required amendments to the existing PPA.

35. As a result, Empower and ADESA (with SolarBlue acting as intermediary, as it was required to under the APA) engaged in negotiations in late 2015 to early 2016 to amend the PPA and Lease. But rather than taking actions necessary to secure these amendments or keep Empower abreast of the status of the negotiations with ADESA, SolarBlue refused to communicate with Empower for weeks, ignoring Empower's emails and failing to return its phone calls regarding the negotiations with ADESA and other Project development tasks.

36. While Empower was frustrated by ADESA and SolarBlue's lack of responsiveness, Empower did not know then that the silence was designed to cover up SolarBlue's shopping of the Project to the third parties in violation of the APA's exclusivity provisions.

37. In March 2016, after SolarBlue had stopped returning Empower's calls and emails, Empower's CEO Len Jornlin sent a letter to SolarBlue's COO Jeff Cain detailing a list of deliverables that remained outstanding and to be resolved.

> We have concern that a number of Seller deliverables remain outstanding and to be resolved. Based on our tracking, the following are key conditions that need to be resolved or are open deliverables that are required to be satisfied prior to closing the APA:
>
> - A fully executed amendment to the PPA, in form and substance acceptable to Buyer in Buyer's sole discretion;
> - A fully executed amendment to the Lease, in form and substance acceptable to Buyer in Buyer's sole discretion;
> - Completion of all Title work including receipt of all required Estoppels, Subordination and Non-disturbance Agreements ("SNDA") from the landowner and any mortgage holders.
> - Verification that Massachusetts Natural Heritage & Endangered Species Program (NHESP) approval is not needed and does not apply to the project site, or in lieu the required Approvals by NHESP.
> - Verification that Massachusetts Environmental Policy Act (MEPA) review is not required and that the MEPA defined "thresholds" for review and approval are not met, or in lieu the required approvals by MEPA.

38. Subsequent efforts by Empower to get SolarBlue to respond to Project team communications were met with no response.

39. SolarBlue's failure to respond or cooperate in completing Project tasks breached §§ 8.2, 8.7 of the APA, among others.

### 2. SolarBlue Breached the APA by Shopping the Project to Third Parties During the Exclusivity Period

40. As alleged above, SolarBlue agreed that during the Interim Period, Empower had the exclusive right to develop the Project and that SolarBlue was barred from soliciting,

discussing, or entering into any agreement with a third party to develop the Project. (APA. § 8.3.)

41. Throughout Empower's and SolarBlue's relationship, SolarBlue repeatedly expressed its intention to obtain the best deal for SolarBlue, even if that meant breaching the APA.

42. Upon information and belief, in February 2016, SolarBlue's COO Jeff Cain solicited an offer to bid on the Project from a third-party solar developer. Cain asked the third party if it was interested in bidding on or making an offer for the Project and showed it the confidential Project terms.

43. These breaches of the exclusivity provisions of the APA (§ 8.3) were designed not only to rob Empower of the benefit of its bargain and the fruits of its labor, but to unjustly enrich SolarBlue at Empower's expense. For months Empower had been working diligently on Project development—design and site reviews, environmental review, permitting and mitigation, surveys, electrical grid interconnection applications and various other permit applications. SolarBlue sought not only to cut Empower out of the Project, but also to improperly benefit from Empower's months of work.

44. Upon information and belief, SolarBlue is moving forward with a third party to develop the Project.

### 3. SolarBlue's Improper Termination Notice Breached the APA

45. On April 4, 2016, Empower gave notice to SolarBlue's COO Jeff Cain and CEO Lee Maher of SolarBlue's breaches of the APA, and afforded SolarBlue an opportunity to cure. Empower noted:

> Over the past month, Empower has made repeated attempts to contact both you and Mr. Maher to discuss completion of development of the Project and delivery of information that Empower requires to complete its due diligence and financing of the Project, including, without limitation delivery of ADESA Inc.'s financial statements. Despite the fact that we have reached out repeatedly, diligently continued our development work at substantial cost to Empower and clearly communicated the items required for closing, we have received no response or return correspondence to date and, moreover, have the distinct impression that we are being deliberately ignored. We note that you have now missed the last three consecutive weekly Project progress meetings. In addition, we have received information that SolarBlue is marketing the Project in violation of the exclusivity provisions of the APA (see Section 8.3).
>
> Accordingly, we are hereby notifying you that SolarBlue is in breach of the following covenants under the APA: Section 8.2(a) and (c) (*Actions by Seller Prior to Closing*), Section 8.7 (*Development of Project During Interim Period*), Section 8.11 (*Satisfaction of Conditions*), Section 8.12 (*Due Diligence*) and, upon information and belief, Section 8.3 (*Exclusivity*).

46. SolarBlue did not respond to this notice of breach, much less attempt to cure. Instead, three days later, on April 7, 2016, SolarBlue sent Empower a letter, purportedly terminating the APA because ADESA had allegedly backed out of the parties' agreements:

> Please accept this correspondence as the formal notification of my client, Solar Blue, LLC ("Solar Blue"), of its intent to terminate the Asset Purchase Agreement with Empower Energies dated October 6, 2015 (the "APA") pursuant to Sections 9.2(c) and 9.2(e)(ii), effective immediately. As you are aware the client for the Framingham Massachusetts Solar Project (the "Project") is Adesa (the "Client"). On April 1, 2016, Solar Blue received correspondence form the Client stating that the Client would not proceed with the Project with the involvement of Empower Energies. This appears to be an incurable situation, which is out of the reasonable control of Solar Blue. Please be advised that based on the decision of the Client, Solar Blue cannot move forward on the Project with Empower Energies. In an effort to reach an amicable and expeditious resolution of this matter, my client proposes that Solar Blue and Empower Energies enter into the attached Settlement Agreement. Please review and contact my office on or before Monday, April 11, 2016.

47. Under the APA, SolarBlue had a limited right to terminate the agreement under circumstances that have not occurred here. (APA §§ 9.1, 9.2). Neither of the provisions cited in its letter provide a basis for SolarBlue's attempted termination of the APA. Section 9.2(c) provides the Buyer (Empower), not SolarBlue, the right to terminate if the Closing did not occur by a specific date. Section 9.2(e)(ii) is similarly unavailing. It provides SolarBlue a termination right if Empower has materially breached the APA—an event which SolarBlue has not claimed (and cannot claim) occurred.

48. When Empower informed SolarBlue that neither section of the APA cited in its termination letter permitted SolarBlue to terminate, SolarBlue did not dispute the fact that those sections were inapposite. Instead, it claimed that because ADESA had decided to improperly withhold its consent to the assignment to Empower, SolarBlue was somehow relieved of its duties under the APA.

**E. Empower Has Suffered Substantial Damages and Irreparable Harm**

49. Empower spent months negotiating the APA with SolarBlue, developing the Project, completing due diligence SolarBlue had failed to complete, and negotiating with ADESA to amend the PPA and Lease. While Empower was complying with its contractual obligations, SolarBlue was not, and instead had embarked on a campaign to shop the Project to third parties, all while reaping and retaining the benefit of Empower's expertise and development efforts. Upon information and belief, SolarBlue is now developing the Project with a third party.

50. As a result of SolarBlue's misconduct, Empower has suffered substantial damages, including more than $10 million in lost profits over the term of the Project. Empower has also expended hundreds of thousands of dollars in Project related work including developing and implementing a comprehensive plan for designing, permitting, and constructing the Project, working with SolarBlue to accomplish the same, and working with ADESA to amend the PPA and Lease. In addition, Empower has also suffered substantial lost opportunity costs in an amount to be proven at trial. Empower engages in approximately four to five renewable energy projects at a time. Because of its commitment to the Project, it forewent other business opportunities. All of these damages flow from, are traceable to, and were the foreseeable consequence of SolarBlue's willful misconduct.

51. As the parties agreed in the APA, breach would cause irreparable harm entitling the non-breaching party (Empower) the right to "specific performance, injunctive and other

equitable relief, without the necessity of posting of a bond or other security." (APA § 13.2.) Here, because of SolarBlue's breaches, it should be enjoined from pursuing the Project, either on its own or with any third party. Any other remedy, including monetary damages, would be inadequate at law.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Breach of Contract – SolarBlue)

52. Empower repeats and re-alleges the allegations set forth above as if fully set forth below.

53. Empower and SolarBlue entered into the APA, a binding and enforceable contract.

54. Empower performed all or substantially all of its obligations under the APA, and was excused from any further performance as a result of SolarBlue's breaches.

55. SolarBlue breached its obligations to Empower under the APA as alleged above, including by failing to provide numerous deliverables it was obligated to provide as a condition of Closing; failing to consult with Empower for almost a month while Empower was moving forward with Project development and attempting to negotiate amendments to the PPA and Lease; shopping the Project around to third parties in violation of Empower's exclusivity rights; upon information and belief, misappropriating Empower's development plans and work product for its own purposes; and wrongfully attempting to terminate the APA.

56. As a result of SolarBlue's breaches of the APA, Empower has been damaged in an amount to be proven at trial, but in excess of $10 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Empower Energies, Inc. respectfully requests the Court issue the following relief:

A. An Order adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

B. Preliminary and permanent injunctive relief barring Defendant from continuing its breach of the APA and from continuing to develop the Project without Empower;

C. Constructive trust on all Project Assets as defined in the APA, and all related future approvals, permits, and profits;

D. Damages in an amount to be proven at trial;

E. Pre- and post-judgment interest;

F. Attorney's fees and costs; and

G. Any and all other relief that the Court deems just, proper and equitable.

Dated: New York, New York
April 29, 2016

By: /s/ *J. Noah Hagey*
J. Noah Hagey, Esq.

J. Noah Hagey, Esq.
Andrew Levine, Esq.
BraunHagey & Borden LLP
80 Broad St., Suite 1302
New York, NY 10004
Tel./Fax: (646) 829-9403
hagey@braunhagey.com
levine@braunhagey.com

*Counsel for Plaintiff*
*Empower Energies, Inc.*